Docket No. 95181–Agenda 18–May 2003.

RAINTREE HOMES, INC., 
et al.
, Appellees, v. THE VILLAGE OF LONG GROVE, Appellant.

Opinion filed March 18, 2004.

JUSTICE FITZGERALD delivered the opinion of the court:

Plaintiffs, Raintree Homes, Inc., and Raintree Builders, Inc., filed a one-count amended complaint against defendant, the Village of Long Grove (the Village), seeking a declaratory judgment as to the validity of a Village ordinance requiring the payment of impact fees to the Village to obtain building permits and a refund of those fees paid by plaintiffs. The circuit court of Lake County dismissed the complaint with prejudice. The appellate court reversed and remanded, holding that the one-year statute of limitations contained in section 8–101 of the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act or Act) (745 ILCS 10/8–101 (West 2000)) did not apply to the present cause of action. 335 Ill. App. 3d 317. The Village argues for reversal of the appellate court because: (1) the statute of limitation of the Act (745 ILCS 10/8–101 (West 2002)) bars all but one of plaintiffs’ claims, (2) plaintiffs lack standing to assert the sole claim that is not time-barred, and (3) the appellate court erred in remanding the matter to a different trial judge. For the following reasons, we affirm in part and reverse in part.

BACKGROUND

Plaintiffs filed their initial complaint on March 26, 1998, and their amended complaint on July 14, 2000. The amended complaint alleged that plaintiffs entered into several contracts to build homes in the Village from February 1993 to August 1997. As a condition of these contracts, plaintiffs were required to apply for and obtain building permits from the Village and were required to pay all impact fees for the issuance of the building permits. From June 26, 1996, through February 1998, section 4–1–4(B) of the village code required the payment of impact fees, setting forth that “as a condition of the issuance of a building permit for the construction of a dwelling unit, the building permit applicant shall be required to donate monies to the Village.” Long Grove Municipal Code §4–1–4(B) (amended June 25, 1996). The impact fees, which totaled $7,300 for each building permit, were for the benefit of the school district and for the acquisition, maintenance, preservation, and operation of open space in the Village. Long Grove Municipal Code §4–1–4(B) (amended June 25, 1996). Between June 26, 1996, and February 21, 1997, plaintiffs paid the required impact fees to obtain building permits for 11 lots. On February 20, 1998, plaintiffs applied for and obtained a twelfth permit for an additional lot, designated Lot 8.

The amended complaint sought a declaration that the required impact fees exceeded the Village’s statutory and constitutional authority and a “refund” of all monies plaintiffs paid to the Village as impact fees. The Village filed a motion to dismiss pursuant to section 2–619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2–619(a)(5) (West 2000)), asserting that plaintiffs’ claims were barred by the one-year statute of limitations contained in section 8–101 of the Tort Immunity Act (745 ILCS 10/8–101 (West 2000)).
(footnote: 1) With respect to Lot 8, the Village alleged that plaintiffs had no standing to assert a claim for that lot because the lot owner, not plaintiffs, paid the impact fees.

The trial court dismissed plaintiffs’ amended complaint with prejudice. The appellate court reversed the dismissal of the complaint, holding that the Act applied only to actions sounding in tort, and remanded the matter to a different judge. 335 Ill. App. 3d at 321. The appellate court did not address the Village’s argument regarding standing. See 335 Ill. App. 3d at 321. We allowed the Village’s petition for leave to appeal (177 Ill. 2d R. 315(a)), and also allowed the Village of Kildeer, the City of Chicago and the Illinois Municipal League to file 
amicus curiae
 briefs in support of the Village (155 Ill. 2d R. 345).

ANALYSIS

The Village first requests this court to reverse the appellate court and uphold the dismissal of plaintiffs’ complaint under section 2–619(a)(5) of the Code. Under section 2–619(a)(5), a defendant is entitled to a dismissal if the “action was not commenced within the time limited by law.” 735 ILCS 5/2–619(a)(5) (West 2002). An appeal from a section 2–619 dismissal is similar to an appeal following a grant of summary judgment, and both are subject to 
de novo
 review. 
Carroll v. Paddock
, 199 Ill. 2d 16, 22 (2002); 
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116 (1993). In both cases, the reviewing court must determine whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law. 
Carroll
, 199 Ill. 2d at 22; 
Kedzie & 103rd Currency Exchange, Inc.
, 156 Ill. 2d at 116-17.

The Village argues that section 8–101 of the Tort Immunity Act unambiguously provides that any “civil action” filed against a municipality, other than those actions specifically excluded by section 2–101 of the Act (745 ILCS 10/2–101 (West 2002)), must be filed within one year from the date the cause of action accrues. As a civil action for damages, the Village asserts, plaintiffs’ cause of action is barred by the Act. Section 8–101 provides as follows:

“No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued. For purposes of this Article, the term ‘civil action’ includes any action, whether based upon the common law or statutes or Constitution of this State.” 745 ILCS 10/8–101 (West 2000).

The enumerated exceptions to which the Village refers are listed in section 2–101, which provides:

“Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee. Nothing in this Act affects the liability, if any, of a local public entity or public employee, based on:

a). Contract;

b). Operation as a common carrier; and this Act does not apply to any entity organized under or subject to the ‘Metropolitan Transit Authority Act’, approved April 12, 1945, as amended;

c). The ‘Worker’s Compensation Act’, approved July 9, 1951, as heretofore or hereafter amended;

d). The ‘Workers’ Occupational Diseases Act’, approved July 9, 1951, as heretofore or hereafter amended;

e). Section 1–4–7 of the ‘Illinois Municipal Code’, approved May 29, 1961, as heretofore or hereafter amended[;]

f). The ‘Illinois Uniform Conviction Information Act’, enacted by the 85th General Assembly, as heretofore or hereafter amended.” 745 ILCS 10/2–101 (West 2002).

If the Act were interpreted to apply only to torts, the Village argues, it would render section 2–101 meaningless, as there would be no need for that section to carve out exceptions to the Act for liability based on nontort actions such as contract actions.

Plaintiffs respond that the Village’s argument mischaracterizes the relief they seek. Plaintiffs maintain that they request a declaration that the Village does not have the statutory authority to require plaintiffs to pay the impact fees, and they also seek a refund of those fees. The amended complaint does not seek “damages,” and, as such, plaintiffs argue, their cause of action is excluded by the plain meaning of the Act. We agree with plaintiffs that section 8–101 of the Tort Immunity Act does not bar plaintiffs’ cause of action.

In construing section 8–101 of the Tort Immunity Act, our primary objective is to ascertain and give effect to the intention of the legislature. 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 503-04 (2000). When the language of a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction. 
Michigan Avenue National Bank
, 191 Ill. 2d at 504. “One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole. Words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute.” 
Michigan Avenue National Bank
, 191 Ill. 2d at 504. We must construe the statute so that each word, clause or sentence is given reasonable meaning and not deemed superfluous or void. 
People v. Glisson
, 202 Ill. 2d 499, 505 (2002).

Plaintiffs’ claim is an action which seeks “relief other than damages,” as set forth in the first sentence of section 2–101, and is, therefore, excluded from the Act. 735 ILCS 10/2–101 (West 2002); see also 
In re Consolidated Objections to Tax Levies of School District No. 205
, 193 Ill. 2d 490, 500-01 (2000) (stating that the Act includes actions seeking damages remedies while excluding actions seeking injunctive remedies). Plaintiffs request nothing more than a declaration that the ordinance is unlawful and a return of the impact fees collected pursuant to the ordinance. We therefore reject the Village’s mislabeling of plaintiffs’ relief as compensation for a wrong done, or “damages” due from a duty, breach, and causation. See, 
e.g.
, Black’s Law Dictionary 393 (7th ed. 1999) (defining damages as “[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury”); Webster’s Third New International Dictionary 571 (1993) (defining damages as “the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right”). Rather, the relief sought is correctly viewed as a refund: the return of money to a person who overpaid because the original payment was in violation of the law. See, 
e.g.
, Black’s Law Dictionary 1285 (7th ed. 1999) (defining refund as “[t]he return of money to a person who overpaid, such as a taxpayer who overestimated tax liability or whose employer withheld too much tax from earnings”); Webster’s Third New International Dictionary 1910 (1993) (defining refund as “to return (money) in restitution, repayment, or balancing of accounts”).

Stated another way, plaintiffs’ requested relief of a refund may be properly designated as seeking an award of restitution. While restitution may be available in both cases at law and in equity (
Great-West Life & Annuity Insurance Co. v. Knudson
, 534 U.S. 204, 212-13, 151 L. Ed. 2d 635, 644, 122 S. Ct. 708, 714 (2002); 1 D. Dobbs, Remedies §4.1(3) at 564-65 (2d ed. 1993)), “[t]he concepts of restitution and damages are quite distinct, but sometimes courts use the term damages when they mean restitution.” 1 D. Dobbs, Remedies § 3.1, at 280 (2d ed. 1993). As Professor Dobbs states in his 1993 revision of his Treatise on Remedies:

“The damages award is not the only money award courts make. Courts may also award restitution in money; they may also order money payments in the exercise of equity powers. Damages differs from restitution in that damages is measured by the plaintiff’s loss; restitution is measured by the defendant’s unjust gain.” 1 D. Dobbs, Remedies §3.1, at 278 (2d ed. 1993).

Here, should the court declare that the ordinance exceeds the Village’s statutory or constitutional authority, the lawsuit seeks an award of restitution because it seeks the restoration of the sum of money in the possession of the Village which in good conscience belongs to the plaintiffs. Plaintiffs do not allege that an employee’s collection of the fees breached a duty as a predicate for the liability of the Village. Plaintiffs seek the return of their monies paid to the Village, and no more. They do not seek compensation for the loss of capital which they could have devoted to other investments, such as earnings from investing in the construction of another residence. Thus, if the lawsuit is ultimately successful, the amount of the award will be measured by the Village’s unjust gain, rather than the plaintiffs’ loss.

Professor Dobbs explains that: 

“When restitution and damages would produce the same award, it is often unimportant to characterize the claim at all. ***

On the other hand, if the plaintiff has 
no 
substantive claim grounded in tort, contract, or statute, then if the plaintiff’s claim is viable at all, it 
must
 be one for restitution to prevent unjust enrichment. That is so because restitutionary ideals form the only substantive basis for the claim. In that case, the recovery will force disgorgement of the defendant’s gains (restitution) and also provide the equivalent of compensation (damages). Even so, if unjust enrichment is the only substantive basis for that recovery, the claim is for restitution.” (Emphases in original.) 1. D. Dobbs, Remedies §4.1(1), 555-56 (2d ed. 1993).

Here, plaintiffs have no substantive claim grounded in tort, contract, or statute, therefore the only substantive basis for the claim is restitution to prevent unjust enrichment. Hence, plaintiffs’ requested relief is more properly characterized as restitution rather than damages. Plaintiffs’ cause of action, therefore, is excluded from the Tort Immunity Act by the first sentence of section 2–101 (745 ILCS 10/2–101 (West 2002)).

Because plaintiffs seek the refund of an impact fee, and not damages, the Village’s reliance on 
Village of Bloomingdale v. CDG Enterprises, Inc.
, 196 Ill. 2d 484 (2001), is also misplaced. In 
Village of Bloomingdale
, CDG petitioned the Village of Bloomingdale to annex certain parcels of land and to rezone them so that CDG could build a subdivision. Village of Bloomingdale officials told CDG that the project would be approved. In its counterclaim, CDG alleged that the Village of Bloomingdale secretly sought to acquire and develop a golf course on the property and pressured planning commission members to vote against CDG’s petition. After the petition failed, CDG sought its projected gross profits from the project in the amount of $4.8 million. 
Village of Bloomingdale
, 196 Ill. 2d at 488. Whether CDG’s claim was for damages was not in dispute. CDG did not seek the return of any costs or fees which may have been lost when the petition was denied.

While the Village correctly asserts that 
Village of Bloomingdale
 may have implicitly found that the Act applied to some nontort actions specifically at issue in that case, such a holding does not imply that the Act applies to 
all
 nontort actions against a government, including impact fee refund actions. 
Village of Bloomingdale
 did not affect section 2–101's provision that “[n]othing in this Act affects the right to obtain relief other than damages against a local public entity or public employee” (745 ILCS 10/2–101 (West 2002)), because CDG sought only damages in the form of its projected gross profits. Because the plaintiffs at bar do not seek damages, 
Village of Bloomingdale
 does not control.

The Village’s characterization of the refund of impact fees as “damages” also cannot be reconciled with our decision in 
Sundance Homes, Inc. v. County of Du Page
, 195 Ill. 2d 257 (2001), where we discussed the nature of impact fees and statutes of limitations. In 
Sundance Homes
, the plaintiff filed a complaint on February 8, 1996, seeking relief, including a count for declaratory judgment, for the return of all road impact fees paid between November 22, 1998, and July 25, 1990. The county argued that the plaintiff’s complaint was time-barred by section 13–205 of the Code of Civil Procedure, which imposes a five-year limitation period on “all civil actions not otherwise provided for.” 735 ILCS 5/13–205 (West 1996). Alternatively, the county argued that the plaintiff’s complaint should be barred under the doctrine of 
laches
.

In ruling for the county, we noted that “[a]lthough an impact fee is not a tax [citation], the similarities between payment of a tax, and payment of an impact fee, are sufficient to render instructive tax cases addressing the issue of accrual” of a cause of action. 
Sundance Homes
, 195 Ill. 2d at 266. We then thoroughly discussed statutes of limitations and the doctrine of 
laches 
as they relate to claims for tax refunds. 
Sundance Homes
, 195 Ill. 2d at 266-74. After examining the cause of action alleged in plaintiff’s complaint–which sought
 mandamus
, declaratory judgment, restitution, assumpsit, unjust enrichment and recovery of payments–we found the basis of liability was sufficiently legal in nature to circumscribe the reach of the equitable defense of 
laches
 in favor of the statute of limitations, a legal defense. 
Sundance Homes
, 195 Ill. 2d at 282. However, the issue of whether the award the plaintiff’s sought, a refund of impact fees, constituted “damages” within section 2–101 of the Tort Immunity Act (745 ILCS 10/2–101 (West 2002)) was not raised by the parties. We deemed “refund actions such as the one before us ‘civil actions,’ subject to the statute of limitation set forth in section 13–205 of the Code, irrespective of any artful pleading designed to cloak the cause in the attire of equity.” 
Sundance Homes
, 195 Ill. 2d at 282. We further stated that “[w]e believe the 
legislature intended 
that a uniform and harmonious system of law apply to refund cases, and the maintenance of two time-bar standards for simple refund cases is inconsistent with that intent.” (Emphasis added.) 
Sundance Homes
, 195 Ill. 2d at 284.

Here, to impose a time-bar contained in the Tort Immunity Act, as the Village urges, would disregard the uniform and harmonious system of law intended by the legislature as reflected by section 13–205 of the Code. See 
Sundance Homes
, 195 Ill. 2d at 284; 735 ILCS 5/13–205 (West 2002). Such an imposition would also be a hazard for litigants who, if the Village’s interpretation were to be adopted, must be counterintuitively aware that the statute of limitation for an impact fee refund case is found within the Tort Immunity Act. This imposition could also conceivably extend to tax refund cases, due to the “similarities between payment of a tax, and payment of an impact fee.” 
Sundance Homes
, 195 Ill. 2d at 266. However, the creation of another time-bar standard within the Tort Immunity Act is unnecessary because when plaintiffs’ cause of action is properly characterized as one for the refund of impact fees, it is evident that the Tort Immunity Act does not apply.

Thus, while we do not adopt or approve of the appellate court’s reasoning that the Tort Immunity Act categorically excludes actions that do not sound in tort (335 Ill. App. 3d at 320), this court can affirm the appellate court on any basis present in the record. 
In re Application of the Cook County Treasurer
, 185 Ill. 2d 428, 436 (1998). We affirm on the grounds that the plain meaning of section 2–201 of the Tort Immunity Act excludes the type of cause of action at issue here, namely, an action seeking a declaratory judgment that the Village’s impact fee ordinance exceeded statutory authority and a refund of all monies plaintiffs paid to the Village pursuant to that ordinance. 745 ILCS 10/2–201 (West 2002). Accordingly, we hold that section 8–101 of the Tort Immunity Act does not bar plaintiffs’ amended complaint. 745 ILCS 10/8–101 (West 2002).

We next address the Village’s contention that plaintiffs lack standing to bring a claim in connection with Lot 8. In the Village’s motion to dismiss plaintiffs’ amended complaint, the Village alleged that plaintiffs lacked standing to raise a claim with respect to Lot 8 because plaintiffs did not pay the impact fees for that lot. In support of its motion, the Village attached the evidence deposition of Edward Brown, the president of both plaintiff companies. In his deposition, Brown acknowledged that the impact fees for Lot 8 were passed on to the lot owners by increasing the purchase contract price by $7,300. Plaintiffs did not file a counteraffidavit nor did they dispute that the fees were actually paid by the lot owner and not plaintiffs.

Lack of standing is an affirmative matter that may be raised as a ground for dismissal under a section 2–619 motion to dismiss. 
Glisson v. City of Marion
, 188 Ill. 2d 211, 220 (1999). The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit. 
Glisson
, 188 Ill. 2d at 221.

In ruling on a motion to dismiss under section 2–619, the trial court may consider pleadings, depositions, and affidavits. 
Zedella v. Gibson
, 165 Ill. 2d 181, 185 (1995). When supporting affidavits have not been challenged or contradicted by counteraffidavits or other appropriate means, the facts stated therein are deemed admitted. 
Zedella
, 165 Ill. 2d at 185. In the absence of supporting affidavits, discovery depositions may be used for any purpose for which affidavits may be used. 
Kedzie & 103rd Currency Exchange, Inc.
, 156 Ill. 2d at 116, citing 
Sierens v. Clausen
, 60 Ill. 2d 585, 588 (1975).

Plaintiffs made no attempt before the trial court to contradict Brown’s sworn testimony and they did not dispute that the contract price between the lot owner and plaintiffs reflected an increase in the total purchase price to include $7,300 for impact fees. Plaintiffs also did not allege any other injury pertaining to Lot 8. Thus, under the circumstances, we find that plaintiffs lack standing to assert a cause of action based on the landowner’s payment of the impact fees for Lot 8. Accordingly, the trial court properly granted the Village’s motion to dismiss with respect to plaintiffs’ claim for Lot 8.

 We finally turn to the appellate court’s remand of the matter to a different trial judge. Under Illinois Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), the appellate court has the power to make any order that ought to have been made and make other further orders that the case may require. 
Eychaner v. Gross
, 202 Ill. 2d 228, 279 (2002). Such powers includes the authority to reassign a matter to a new judge on remand. 
Eychaner
, 202 Ill. 2d at 279. A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice. 
Eychaner
, 202 Ill. 2d at 280. “Allegedly erroneous findings and rulings by the trial court are insufficient reasons to believe that the court has a personal bias for or against a litigant.” 
Eychaner
, 202 Ill. 2d at 280. Here, plaintiff did not request this relief before the appellate court, and the appellate court made its ruling without discussing any bias on the part of the trial judge. Plaintiffs now request this court to uphold the reassignment. We find, however, that the plaintiffs have not met their burden because the only grounds alleged are the trial judge’s prior adverse rulings against them. Therefore, we reverse the appellate court’s reassignment of the matter to a different trial judge.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court reversing the circuit court’s dismissal of plaintiffs’ complaint based on section 8–101 of the Tort Immunity Act. We also affirm the trial court’s dismissal of plaintiffs’ complaint pertaining to Lot 8 based on standing and reverse the judgment of the appellate court remanding the matter to a different trial judge.

Appellate court affirmed in part and reversed in part;

circuit court affirmed in part and reversed in part.

JUSTICE THOMAS took no part in the consideration or decision of this case.

FOOTNOTES
1:     
1
The trial court, before granting the motion to dismiss based on the statute of limitations issue and standing, struck certain paragraphs of plaintiffs’ amended complaint because they did not contain well-pleaded allegations of fact pursuant to defendant’s motion to dismiss under section 2–615 of the Code (735 ILCS 5/2–615 (West 2000)). The appellate court affirmed this specific ruling. 335 Ill. App. 3d at 321. Plaintiffs do not appeal this issue, and we do not address it here.