2025 IL App (1st) 242579-U

FIFTH DIVISION
September 26, 2025

No. 1-24-2579

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JONES LANG LASALLE AMERICAS, LP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 24 M1 711424 |
| | ) | |
| CHRISTOPHER FREEMAN, | ) | The Honorable |
| | ) | Corinne C. Heggie, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court properly entered an eviction order against defendant.

¶ 2                                     I. BACKGROUND

¶ 3    On April 10, 2024, Christoper Freeman entered into a lease agreement to rent the property located at 4611 N. Broadway Street, #201, in Chicago. The lease had a commencement date of April 12, 2024, an end date of June 11, 2025, and rent was $2795 a month.

¶ 4    On July 10, 2024, Jones Lang LaSalle Americas LP (JLLA), agent for the owner of the 4611 N. Broadway property, served a Landlord's Five Day Notice on Freeman. The notice

indicated that Freeman owed JLLA $8194.25 in unpaid rent, and stated that "unless payment thereof is made on or before the expiration of five days after service of this notice your possession of said premises shall be terminated."

¶ 5    On July 18, 2024, JLLA filed a complaint for possession and judgment, noting that Freeman had failed to pay the past due rent, and asking the court for possession of the property and a judgment in the amount of $8194.25, plus "any and all rents which accrue subsequent to the filing of this action" and court costs.

¶ 6    On July 23, 2024, JLLA filed an eviction summons against Freeman, which says, "IMPORTANT: You have been sued." The summons informed Freeman that he "MUST attend court" on September 4, 2024, and that if he failed to do so "the judge may decide the case without hearing from you. This is called a 'default.' As a result, you could lose the case."

¶ 7    An affidavit of service from the Sheriff's Office of Cook County indicates that service was attempted on August 21, 2024, but was not effectuated due to "no contact."

¶ 8    At a hearing on September 4, 2024, JLLA was granted leave to issue an alias summons and to serve Freeman via special process server, and the case was continued until October 1, 2024.

¶ 9    A special process server indicated in his affidavit that he unsuccessfully attempted to serve Freeman on September 8, 10, 12, 13, 14, 17, 20, and 21, at various times throughout the day. Each time he knocked on the door of Freeman's apartment, no one answered.

¶ 10    At a hearing on October 1, 2024, the court continued the case until October 22, 2024. The special process server indicated in a second affidavit that "after due search, careful inquiry and diligent attempts" at service, he had been unable to serve Freeman. He attempted service on October 7, 8, 10, 11, 13, and 15, at various times throughout the day, but no one answered at

Freeman's residence. He wrote, "no contact could be made with the defendant at this address. There is no evidence that the property is vacant. I knocked on the door of the unit. No answer."

¶ 11 At the hearing on October 22, 2024, JLLA was granted leave to issue and alias summons and to serve Freeman with process by posting, and the case was continued until November 19, 2024.

¶ 12 On October 23, 2024, an affidavit for service by posting was filed, which indicates that Freeman "cannot be found after diligent inquiry" and that his place of residence "cannot be ascertained after diligent inquiry."

¶ 13 On October 31, 2024, a "Notice Requiring Appearance in Pending Action" was posted at the Cook County Government Building, at City Hall, and at the Daley Center. It informed Freeman that he was required to appear in court for trial on November 19, 2024, and that if he failed to appear, "judgment by default will be entered against you for possession of the aforesaid premises."

¶ 14 A special process server attempted to serve Freeman eight more times at his residence at various times of day between October 31, 2024, and November 10, 2024, but no one answered the door.

¶ 15 At a hearing on November 19, 2024, the court continued the case to December 3, 2024, for a prove up, and instructed JLLA to notify Freeman.

¶ 16 On December 3, 2024, the court entered an eviction order by default. The order indicated that JLLA was given possession of the property, and gave Freeman until December 10, 2024, to vacate the property; if Freeman did not vacate by that date, the sheriff was ordered to evict him. The court dismissed the money claim and indicated that JLLA could pursue that claim against Freeman in the future.

¶ 17    On December 11, 2024, a 24-Hour Notice of Entry was filed with the court, which informed Freeman that JLLA would be performing an occupancy check on December 11, 2024, "pursuant to the legal arrangement made with the court." It indicated that Freeman needed to vacate the property or else a Sheriff would "facilitate a 'set-out' which entails all occupants and belongings being removed from the apartment."

¶ 18    On December 11, 2024, Freeman filed an affidavit with the court, in which he asserted that the court lacked jurisdiction over him because he had never been "properly or personally served" and never "received any summons or warrant regarding this legal matter." The next day, he moved to set aside the court's December 3, 2024, default judgment. He appealed to this court on December 26, 2024. He was ultimately evicted from the property on March 20, 2025.

¶ 19                                II. ANALYSIS

¶ 20    In Freeman's *pro se* appeal, he argues that the court lacked jurisdiction to enter the eviction order because he was never personally served, writing "No personal summons/warrant delivered; no case." He claims he was "not aware of any suit alleged filed against [his] property" because he "never received any summons/warrant, notices or paperwork to rebut this case earlier in trial court."

¶ 21    "[A] plaintiff in an eviction action must properly serve an individual defendant with process in order to vest the trial court with the personal jurisdiction necessary to enter judgment." *Corlis v. Edelberg,* 2018 IL App (1st) 170049, ¶ 17. If a plaintiff is unable to serve a defendant personally, however, he can do so constructively. *Id.*

¶ 22    Section 5/9-107 of the Eviction Act (735 ILCS 5/9-107 (eff. Jan. 1, 2018)) outlines the process required to effectuate constructive service in eviction actions. *Corlis,* 2018 IL App (1st) 170049, ¶ 12. It states:

4

"[i]f the plaintiff *** files an eviction action *** and is unable to obtain personal service on the defendant or unknown occupant and a summons duly issued in such action is returned without service stating that service cannot be obtained, then the plaintiff, his or her agent or attorney may file an affidavit stating that the defendant or unknown occupant is not a resident of the State, or has departed from this State, or on due inquiry cannot be found, or is concealed within this State so that process cannot be served upon him or her, and also stating the place or residence of the defendant or unknown occupant, if known, or if not known, that upon diligent inquiry the affiant has not been able to ascertain the defendant's or unknown occupant's place of residence, then in all such eviction cases whether or not a claim for rent is joined with the complaint for possession, the defendant or unknown occupant may be notified by posting and mailing of notices; or by publication and mailing, as provided for in section 2-206 of this Act.

****

Such notice shall be in the name of the clerk of the court, be directed to the defendant or unknown occupant, shall state the nature of the cause against the defendant or unknown occupant at whose instance issued and the time and place for trial, and shall also state that unless the defendant or unknown occupant appears at the time and place fixed for trial, judgment will be entered by default, and shall specify the character of the judgment that will be entered in such cause. The sheriff shall post 3 copies of the notice in 3 public places in the neighborhood of the court where the cause is to be tried, at least 10 days prior to the day set for the appearance, and, if the place of residence of the defendant or unknown occupant is stated in any affidavit on file, shall at the same time mail one copy of the notice

5

addressed to such defendant or unknown occupant at such place of residence shown in such affidavit." 735 ILCS 5/9-107.

"A plaintiff that strictly complies with the posting and mailing (or publication and mailing) requirements of section 9-107 of the Act properly effects constructive service of process upon a defendant and can obtain an order of possession[.]" *Corlis*, 2018 IL App (1st) 170049, ¶ 21.

¶ 23 Here, JLLA attempted to personally serve Freeman more than 20 times. After these attempts were unsuccessful, the special process server filed an affidavit, in which he indicated that Freeman "cannot be found after diligent inquiry" and that his place of residence "cannot be ascertained after diligent inquiry." Afterwards, the court granted JLLA leave to issue alias and notice by posting. JLLA then complied with the posting requirements outlined in section 5/9-107. Accordingly, JLLA properly effectuated constructive service of process upon Freeman and was entitled to obtain an order of possession.

¶ 24 Freeman makes several other assertions, including that the circuit court brought a "frivolous claim" against him without his consent, but none are supported by citations to the record or relevant legal authority. In *Lewis v. Heartland Food Corp.,* 2014 IL App (1st) 123303, ¶ 5, we noted that reviewing courts are "entitled to have the issues clearly defined, pertinent authority cited, and a cohesive legal argument presented" and that "[p]ro se litigants are not excused from following rules that dictate the form and content of appellate briefs." Because we cannot follow Freeman's other arguments, which are not supported by the record or relevant legal authority in violation of Supreme Court Rule 341 (Ill. S. Ct. R. 341 (West 2024)), we decline to consider them. See, *e.g., Kindred 3 Real Estate Services, LLC v. Breckenridge*, 2023 IL App (1st) 221113-U, ¶ 23 (finding appellant forfeited her arguments on appeal because her brief "provides no citations to the record and fails to articulate a legal argument which would allow a meaningful review of her

claims"); *Leasing & Management (Gill Park Co-Op) v. Lasley*, 2023 IL App (1st) 220895-U, ¶¶ 13, 15 (dismissing appellant's appeal where her brief "does not contain cohesive legal arguments, reasoned bases for its contentions, citations to the record, or citations to legal authorities").

¶ 25                                    III. CONCLUSION

¶ 26    For the foregoing reasons, the circuit court's December 3, 2024, eviction order is affirmed.

¶ 27    Affirmed.